# In the United States Court of Federal Claims

No. 09-239C

(Filed June 21, 2011)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **DAWN HALL,** | * | Summary Judgment, RCFC 56(c); |
| | * | Court Leave, 5 U.S.C. § 6322(a); |
| **Plaintiff,** | * | Statutory Interpretation; Plain |
| | * | Language; Absurdity Doctrine; |
| v. | * | Legislative History to Clarify |
| | * | Congressional Intent; Motion |
| **THE UNITED STATES,** | * | to Dismiss, RCFC 12(b)(1); |
| | * | Exclusive MSPB Jurisdiction; |
| **Defendant.** | * | Constitutional Claims. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Richard A. Regnier*, Camarillo, CA, attorney of record for Plaintiff, and *Georgianna Regnier*.

*Elizabeth Anne Speck*, Department of Justice, Washington D.C., with whom was *Assistant Attorney General Tony West*, for Defendant. *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.

## OPINION AND ORDER

*Futey*, **Judge**.

Before the Court is a dispute over the extent of court leave to which certain federal employees are entitled. Under the federal court leave statute, qualifying employees who are "summoned . . . by a court . . . to serve" as jurors are entitled to paid leave for the duration of their service. 5 U.S.C. § 6322(a) (2006). Plaintiff, Dawn Hall, claims entitlement to such leave for service on a year-long panel of the Ventura County Grand Jury ("the Grand Jury") as a juror, a position for which she had applied and been selected. The government asserts that section 6322(a) only covers compulsory jury service.

On March 14, 2011, Hall filed a Motion For Summary Judgment ("Pl.'s Mot."), and on the same day the government filed a Motion For Summary Judgment And Motion To Dismiss In Part ("Def.'s Mot."). The government filed an Opposition To Plaintiff's Motion For Summary Judgment on April 8, 2011 ("Def.'s Opp'n"), and Hall filed a Memorandum Of Points And Authorities In Opposition To Defendant's Motion For Summary Judgment And Motion To Dismiss In Part ("Pl.'s Opp'n") on April 11, 2011. On April 25, 2011, Hall filed

a Reply Memorandum In Support Of Plaintiff's Motion For Summary Judgment ("Pl.'s Reply"), and the government filed a Reply Brief In Support Of Its Motion For Summary Judgment ("Def.'s Reply") on the same day. At Hall's request, oral argument was held in Washington, D.C., on May 25, 2011.

I.    Background

Prior to her removal, Hall worked for the Naval Criminal Investigative Service ("NCIS") as a Computer Engineer in Ventura County, California. In June 2002, she agreed to transfer to Washington, D.C., effective December 2002. Her supervisor, Claude Baldwin, allowed her to delay the transfer until July 2003 due to her mother's poor health. Baldwin reminded Hall in a May 28, 2003 email that she would need "to report for work on Monday, 14JUL03, to the Code 20 Department at NCISHQ Washington Naval Yard" and asked her to notify him immediately if she had any "questions regarding . . . the date of your permanent transfer/arrival to Washington, DC." Def.'s App. in Supp. Mot. Summ. J. & Mot. Dismiss ("Def.'s Mot. App.") 41. In a June 4, 2003 email, Hall responded to Baldwin, "I am planning on best, optimistic case to start my move the first week of July[.]" Def.'s Mot. App. 45.

Earlier that spring, in March 2003, Hall had applied to serve on a year-long panel of the Ventura County Grand Jury. The application process began when she filled out a Prospective Grand Jury Nominee Questionnaire and submitted it to the Superior Court of California, County of Ventura. Since she had applied, the court sent her a Summons To Attend Court As Part Of A Grand Jury Panel on June 20, 2003. The summons was signed by the court's Jury Commissioner, and read:

> YOU ARE HEREBY SUMMONED BY THE COURT to appear at Superior Court of California, County of Ventura [on] Tuesday, July 1, 2003 at 3:00 p.m. to attend the Superior Court as part of the Grand Jury Panel, from which 19 names will be drawn to serve as grand jurors on the 2003-2004 Ventura County Grand Jury. Failure to appear in response to this Summons willfully or without reasonable cause, may subject you to a fine not exceeding Fifty Dollars ($50.00), or to personal attachments compelling your attendance.

Pl.'s Resp. Def.'s Mot. Dismiss Ex. 1A. The actual panel of a Grand Jury is composed both of those who are randomly selected from the pool of applicants, as well as a number of holdovers from the prior year. These 19 jurors do not, like trial juries, decide guilt or innocence, but instead perform primarily investigative functions. At the end of its year-long term, the Grand Jury compiles a report of its activities. *See* CAL. PENAL CODE § 933 (West 2003) (requiring each grand jury to

submit a final report). The panels that Hall served on prepared reports on health care, elder abuse, jail closures, and more. *See Reports For Fiscal Year 2003–2004*, COUNTY OF VENTURA GRAND JURY, *available at* http://portal.countyofventura.org/portal/page/portal/Grand_Jury/Reports/Archived_Reports_2000-2005/TAB4579515 (last visited June 15, 2011); *Reports for Fiscal Year 2004–2005*, COUNTY OF VENTURA GRAND JURY, *available at* http://portal.countyofventura.org/portal/page/portal/Grand_Jury/Reports/Archived_Reports_2000-2005/TAB4579509 (last visited June 15, 2011).

After she received the summons, Hall informed NCIS that she would need court leave. On June 27, 2003, Hall wrote Baldwin to request leave for "Jury Duty" on Tuesday, July 1, 2003. After appearing at court on that day and being selected to serve, Hall wrote Baldwin, "I was selected and sworn in for the Ventura County Grand Jury today. Starting today, 01JUL03, I will be on court leave until 01JUL04. I will provide a confirmation letter from the Grand Jury when it is available." Def.'s Mot. App. 115.

NCIS quickly let Hall know it was displeased with her decision to serve on the Grand Jury. Baldwin wrote Hall on July 11, 2003 and told her he was "troubled" by her volunteering for a position on the Grand Jury and posed a number of questions about the Grand Jury, to which Hall did not respond. *Id.* at 120. Later that month, on July 30, Louis Beyer, the Assistant Director for Administration at NCIS, wrote Judge Bruce Clark, who presided over the Grand Jury, and requested that Hall be released from service. Judge Clark replied to NCIS that he would not release Hall "against her expressed desire to continue her service," but he also wrote, "[S]ince Grand Jury service is completely voluntary, please be assured that the court will approve any request by Mrs. Hall to resign from her duties on the Grand Jury." *Id.* at 58. Judge Clark also personally told Hall that he would "honor" a resignation request. *Id.* at 16.

Despite its misgivings over her Grand Jury service, NCIS paid Hall her full salary during the 2003–04 term of the Grand Jury. Near the end of that term, Deputy Assistant Director Joseph Vann, who had replaced Baldwin as Hall's supervisor, wrote Hall on May 26, 2004 and ordered her to report for duty in Washington, D.C., no later than July 14, 2004. According to the letter, Hall was "directed not to seek or accept extension of [her] grand jury duties." *Id.* at 60.

By the time of Vann's order, however, Hall had already begun plans to serve a second year on the Grand Jury. Hall spoke with the current Grand Jury foreman and Judge Clark in the Spring of 2004 about serving as foreman of the 2004–05 Grand Jury panel. Hall testified at a deposition, "The judge asked me if I would serve as foreman the following year, and I had the opportunity to say no." *Id.* at 17. She, however, decided to again volunteer for the Grand Jury, and received another Summons To Attend Court As Part Of A Grand Jury panel on June 21, 2004. After receiving the second summons, Hall contacted Vann on June 28, 2004 to inform him that she would serve "a final year on the Ventura

County Grand Jury beginning on July 1, 2004 and ending on June 30, 2005." *Id.* at 67.

Since Hall did not report for duty as ordered, NCIS placed her on absent without leave ("AWOL") status and eventually removed her. Vann informed her on October 18, 2004 that she would be marked as AWOL and not paid as of July 14, 2004. Vann also wrote that he would recommend Hall's removal, which he did on November 12, 2004. A Notice of Proposed Removal was issued on February 17, 2005 and rested on three charges: failure to report for duty by July 14, 2004; refusal to obey the order requiring Hall to refrain from another term of Grand Jury service; and being AWOL since July 14, 2004. Although Hall contested her removal, a final decision was issued on June 22, 2005, and her removal became effective on June 29, 2005.

Hall has challenged this removal before both the Merit Systems Protection Board ("MSPB") and the Office of Personnel Management ("OPM"). She initially appealed the proposed removal to the MSPB in early 2005. The MSPB dismissed this appeal for lack of jurisdiction on February 7, 2005, since she had not yet been removed. On July 13, 2005, Hall filed another appeal with the MSPB. This appeal was dismissed at her request on September 9, 2005, since Hall intended to seek an OPM determination of whether or not she was entitled to court leave. On January 12, 2006, OPM found that section 6322(a) does not cover voluntary service on a grand jury, and denied Hall's claim to court leave.

Hall filed the pending suit in the United States Court of Federal Claims on April 20, 2009. The government moved to dismiss the case on June 19, 2009 under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court granted that motion on September 10, 2009. The Court held that it lacked jurisdiction to consider Hall's claims for back pay and other relief because they fell under the jurisdiction of the MSPB, and the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (1978), precludes this Court from exercising jurisdiction over claims for which the MSPB has jurisdiction. ***Hall v. United States***, 89 Fed. Cl. 102, 109 (2009). Hall appealed to the United States Court of Appeals for the Federal Circuit, which reversed and remanded the case on September 1, 2010. ***Hall v. United States***, 617 F.3d 1313, 1318 (2010). The Federal Circuit held that this Court does have jurisdiction over Hall's "pre-removal claim for back pay," *id.* at 1317, and remanded for a determination of whether "Hall was entitled to paid leave under section 6322(a)." *Id.* at 1318.

II.   Discussion

Following remand, the parties conducted discovery and then filed the pending dispositive motions on March 14, 2011. Both parties move for summary judgment under RCFC 56(c) on the issue of court leave entitlement, and the

4

government additionally has moved to dismiss under RCFC 12(b)(1) Hall's claims for ancillary relief and Constitutional violations.

        A.     *Entitlement to Court Leave Under Section 6322(a)*

The parties' cross-motions for summary judgment address whether or not Hall was due paid court leave for her service on the 2004–05 Grand Jury.[1] At the heart of the parties' dispute is the determination of whether the federal court leave statute, 5 U.S.C. § 6322(a), covers service as a grand juror, when a person voluntarily applies for that position.

        1.     Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *see also* **Consolidation Coal Co. v. United States**, 615 F.3d 1378, 1380 (Fed. Cir. 2010). A material fact is one that "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). In reviewing the facts, "all justifiable inferences are to be drawn" in favor of the party opposing summary judgment. *Id.* at 255. Once the movant has shown that no genuine issue of material fact exists, the party opposing summary judgment must demonstrate that such an issue does, in fact, exist. **Celotex Corp. v. Catrett**, 477 U.S. 317, 324 (1986). To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." **SRI Int'l v. Matsushita Elec. Corp. of Am.**, 775 F.2d 1107, 1116 (Fed. Cir. 1985). If the party opposing fails to make this showing, entry of summary judgment is "mandate[d]." **Celotex**, 477 U.S. at 322.

        2.     The Plain Language of Section 6322(a)

When interpreting a statute, a court must "start[] with the plain language." **Barela v. Shinseki**, 584 F.3d 1379, 1382 (Fed. Cir. 2009). Statutes are not, however, interpreted in a vacuum, and a court "must consider not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme." *Id.* at 1383. A statute's meaning, regardless of whether the language is "plain or not, thus depends on context." *Id.*

---

[1] As noted above, the government paid Hall for her service on the 2003–04 Grand Jury. Hall was determined to be AWOL and placed in a non-paid status as of July 14, 2004, shortly after she began her term on the 2004–05 Grand Jury.

In relevant part, section 6322(a) provides:

(a) An employee . . . is entitled to leave, without loss of, or reduction in, pay, leave to which he otherwise is entitled, credit for time or service, or performance or efficiency rating, during a period of absence with respect to which he is summoned, in connection with a judicial proceeding, by a court or authority responsible for the conduct of that proceeding, to serve—

   (1) as a juror; or
   (2) . . . as a witness on behalf of any party in connection with any judicial proceeding to which the United States, the District of Columbia, or a State or local government is a party;

. . . For the purpose of this subsection, "judicial proceeding" means any action, suit, or other judicial proceeding, including any condemnation, preliminary, informational, or other proceeding of a judicial nature, but does not include an administrative proceeding.

5 U.S.C. § 6322(a). The statute also allows OPM to prescribe regulations to administer the section, but OPM has not promulgated any regulations.

According to Hall, the meaning of section 6322(a) is clear and covers her leave: as long as a covered employee "is summoned . . . by a court . . . to serve . . . as a juror," then that employee must receive paid court leave. *Id.* In this case, Hall was an "employee" within the coverage of section 6322(a), received a Summons To Attend Court As Part Of A Grand Jury Panel on June 21, 2004, and was selected to be part of the Grand Jury. Since she received this summons, Hall contends that her leave should be covered by section 6322(a).

The government, on the other hand, argues that the section leaves undefined a key word: "summoned." Black's Law Dictionary defines "summon" as "[t]o command (a person) by service of a summons to appear in court," and defines "summons" as a "notice requiring a person to appear in court as a juror or witness." BLACK'S LAW DICTIONARY 1574 (9th ed. 2009). The government cites to a number of similar general dictionary definitions. *See* Def.'s Mot. 16. Generalizing these definitions, the government argues that volunteering and requesting to be a grand juror is distinct from a situation in which one is commanded or required to make a court appearance.

The difficulty with the government's interpretation is that the statute only requires that a person be "summoned . . . by a court." Whether or not Hall engineered the receipt of her summons, she did receive a "Summons To Attend Court." This summons required her "to attend the Superior Court as part of the

Grand Jury Panel," and threatened with a $50 fine if she failed to attend. A command by a court to attend court, at the threat of a fine, would seem to fall within common definitions of the word "summoned." Thus, the bare text of the statute appears to support Hall's entitlement to court leave. As noted above, however, interpretation of a statute does not end after considering a context-free "bare meaning." *Barela*, 584 F.3d at 1383.

### 3. The Statutory Context of Section 6322(a)

Section 6322(a) provides court leave for both jury service and witness service, and uses the same operative language to do so. If an employee is "summoned . . . by a court . . . to serve" either under (a)(1) as a "juror," or under (a)(2) as a "witness," then that employee is entitled to court leave. 5 U.S.C. § 6322(a). As discussed below, the legislative history behind both (a)(1) and (a)(2) shows a concern with relieving the burdens of compulsory court attendance. It is thus proper to interpret these two provisions *in pari materia*, since "courts should interpret statutes with similar language that generally address the same subject matter together, as if they were one law." *Strategic Hous. Fin. Corp. of Travis County v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) (internal quotations removed); *see also Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1292 (Fed. Cir. 2002) (declining to interpret sections of the same law *in pari materia* when Congress may have had differing motivations for those sections).

The government also argues that section 6322(a) should be interpreted *in pari materia* with a later section of Title V of the United States Code, but those two sections cover different subject matters. The later section, 5 U.S.C. § 7106(a), outlines management rights in the federal labor system. In relevant part, section 7106(a) states that "nothing in this chapter shall affect the authority of any management official of any agency . . . in accordance with applicable laws . . . to assign work." 5 U.S.C. § 7106(a) (2006). The government follows the reasoning of OPM and argues that section 7106(a) would be rendered null if an employee could, as in this case, ignore a direct order to not volunteer for a second term of jury service. This is not, according to the government, a "harmonious[]" interpretation of the two sections. *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring).

The government's argument is unavailing for three reasons. First, the plain text of section 7106(a) clearly does not apply to section 6322(a), since section 7106(a) only covers matters "in this chapter," and section 6322(a) is in a different chapter of Title V. 5 U.S.C. § 7106(a). Second, section 7106(a) specifies that management must act "in accordance with applicable laws." *Id.* If, as Hall argues, section 6322(a) entitles her to court leave, then management would have no right under section 7106(a) to order Hall to not serve on the Grand Jury. The question of whether or not Hall is entitled to court leave under section 6322(a) is a necessary predicate for determining the scope of section 7106(a).

7

Third and finally, the government and OPM have taken section 7106(a) out of context. That provision is part of a series of statutes that comprise the Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–35 (2006), and govern the interaction of labor and management in collective bargaining. It has little to do with the extent of court leave to which Hall is entitled.

         4.      Judicial and Administrative Interpretation of Section 6322(a)

Apart from OPM's earlier opinion on Hall's entitlement, no administrative body or court has confronted the precise question of this case, and it is an issue of first impression in this Court. The Court of Appeals for the Federal Circuit made no comment on the merits of Hall's section 6322(a) claim in its opinion in this case, but only addressed this Court's jurisdiction to hear that claim.

Administrative materials that reference section 6322(a) often describe that section as allowing court leave when an employee is called for "jury duty" or "jury service." *See, e.g.*, INTERNAL REVENUE SERV., TIME & LEAVE HANDBOOK 99 ("It is the civil responsibility of all IRS employees to respond to calls for jury and other court services."), *available at* http://nteu222.org/Documents/TimeLeaveHB.pdf; U.S. DEP'T OF STATE, FOREIGN AFFAIRS MANUAL VOL. 3—PERSONNEL 1 ("In view of the importance of trial by jury . . . [the State Department] will not ask that their employees be excused from jury duty . . . . An employee who is under proper summons from a State or Federal court to serve on a jury must be granted court leave[.]"), *available at* http://www.state.gov/documents/organization/85087.pdf. These phrases connote obligation, and Black's Law Dictionary similarly describes "jury duty" as an "obligation to serve on a jury." BLACK'S LAW DICTIONARY 935 (9th ed. 2009). No administrative materials appear to address the question of whether jury duty includes service in a position for which one voluntarily applies.

Once the obligation of jury duty attaches, the GAO has held that an employee is under the jurisdiction of the court, and need not seek a release from jury duty. In an early case, the GAO found that an employee is entitled to court leave for the "entire period" of court service, regardless of how many hours or days he must serve. ***Matter of Leaves of Absence, Jury Service***, 20 Comp. Gen. 131 (1940). In a later case, the GAO held that an employee need not seek an excuse from jury duty, once called for it. There, an employee lived in Virginia but maintained a residence in New Jersey, and was summoned to serve as a juror in New Jersey. ***Matter of C. Robert Curran***, 64 Comp. Gen. 851 (1985). His employing agency denied him court leave, since he could have told the court that he lived in Virginia and been excused from jury duty. *Id.* at 852. The GAO held that an employee is entitled to leave when "he is (1) summoned, (2) in connection with a judicial proceeding by a court, (3) to serve as a juror" and that an employee who meets those requirements is entitled to leave "regardless of whether he may be excused from the jury duty because of the distance he must travel or for some

8

other reason." *Id.* at 853. In both opinions, the GAO found that once a proper summons had attached, court leave was guaranteed.

The GAO has not addressed the issue of whether section 6322(a) covers "summons" that stem from an employee applying for jury service, but the GAO has found that other "summons" fall outside the scope of section 6322(a). According to the GAO, section 6322(a) does not extend to employees who are plaintiffs and testify as witnesses on their own behalf, ***Matter of Wilma Pasake***, 59 Comp. Gen. 290 (1980), employees summoned as witnesses in cases where they are the defendant, ***Matter of Entitlement of Employee-Defendant to Court Leave***, 62 Comp. Gen. 87 (1982), or employees summoned as witnesses in juvenile court proceedings where they are essentially a party to those proceedings. ***Matter of Court Leave***, B-214719, 1984 WL 46229 (Comp. Gen. June 25, 1984). In each of these cases, the GAO found that the employees were not entitled to court leave, even though they had been summoned as witnesses. Essentially, the GAO read in an exception to section 6322(a)(2)'s witness leave: if an employee is a party to a case, he or she may not make use of the witness leave provision.

5. *Skidmore* Deference and OPM's Opinion

At Hall's request, OPM considered whether or not she was entitled to court leave, and found she was not. The government urges the Court to consider this informal opinion, contained in a letter to Hall, as persuasive authority, under ***Skidmore v. Swift & Co.*** 323 U.S. 134 (1944). In ***United States v. Mead Corp.***, the Supreme Court recognized that agency interpretations of statutes that fall outside the zone of *Chevron* deference may nevertheless receive some deference under the pre-*Chevron* standards of *Skidmore*. 533 U.S. 218, 234–35 (2001). Here, as the government admits, Def.'s Reply 11, OPM's opinion clearly does not warrant *Chevron* deference, since it is "an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking." ***Christensen v. Harris Cnty.***, 529 U.S. 576, 587 (2000). The weight of deference under *Skidmore* varies widely with the circumstances, and the Federal Circuit has noted that a court should "defer to an agency interpretation of the statute that it administers if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute." ***Cathedral Candle Co. v. U.S. Int'l Trade Comm'n***, 400 F.3d 1352, 1366 (Fed. Cir. 2005). The government, here, points to OPM's "substantial expertise" with the federal personnel system, Def.'s Reply 11, and to its "careful analysis" of section 6322(a). *Id.* at 12.

While the Court agrees that OPM's opinion letter contains a careful analysis of the statutory question, the Court is not persuaded that the letter merits much deference under *Skidmore*. Unlike cases such as *Cathedral Candle Co.*, OPM has not maintained a longstanding interpretation of section 6322(a). *See*

*Cathedral Candle Co.*, 400 F.3d at 1367 (noting that the agency's "interpretation was contemporaneous with the enactment of the [relevant statute] and has been adhered to consistently by the agency since that time. It is not a position formulated belatedly in response to litigation in this case[.]"). Furthermore, the opinion letter in this case "was made at a low level within the agency" and was not appealable, within OPM. *Id.* The Court thus will not defer to the informal OPM letter's interpretation of this issue of first impression.

>6. The Absurdity Doctrine and Legislative History of Section 6322(a)

Although statutory interpretation begins with the "plain text," a court turns to "the traditional tools of statutory construction, e.g., legislative history," if the intent and meaning of a statute are not clear from its plain text. *Grapevine Imports, Ltd. v. United States*, 636 F.3d 1368, 1376 (Fed. Cir. 2011). Intent is not derived merely from the bare text, but also from the "structure of the statute." *Xianli Zhang v. United States*, Nos. 2010-5026, 2010-5027, 2011 WL 1321187, at *5 (Fed. Cir. Apr. 6, 2011). A court must "give effect to the unambiguously expressed intent of Congress," but can resort to legislative history to clarify that intent. *Id.*

Furthermore, when determining whether or not to consider legislative history, a court should attempt to avoid "'absurd results.'" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). When "the literal reading of a statutory term would 'compel an odd result,'" a court "must search for other evidence of congressional intent to lend the term its proper scope." *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989) (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989)); *see also* *Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1563 (Fed. Cir. 1984) (noting that at times a "cold textual analysis . . . produces absurd results, results that were not and could not have been within the contemplation of Congress"). In its current state, the absurdity doctrine applies:

> [W]here the supposed absurdity does not arise from the judge thinking himself wiser than the legislator, or better able to draft workable laws, where the true intent of Congress is clearly articulable from the whole body of laws of which the provision to be construed is a part, or the legislative history, and where the literally stated intent is broader than the true intent.

*Ambassador*, 748 F.2d at 1564–65; *see also* *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459 (1892) ("[F]requently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation . . . or of the absurd results which follow

from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.").

In this case, the bare text of section 6322(a) contains overbroad language that could produce an absurd result, such as allowing an employee unlimited court leave. As discussed above, the GAO has attempted to avoid overly broad readings of section 6322(a)'s witness provisions and construed the section to not provide leave for employees who are parties to a case. The Court thus considers it appropriate to examine the legislative history of section 6322(a) to aid its determination of whether the legislative intent of section 6322(a) would cover Hall's service on the Grand Jury. Two primary points in the legislative history are relevant to that question: the enactment in 1940 of the original court leave statute, and the expansion of the court leave entitlement in 1970.

The original version of the court leave statute used different wording than the modern entitlement, and those words, as well as the history of the original version, show a concern with compulsory jury service. Enacted in 1940, that first version provided paid leave for federal employees "who may be called upon for jury service in any State court or court of the United States." Act of June 29, 1940, Pub. L. No. 76-676, 54 Stat. 689 (1940). The phrase employed here—"who may be called upon"—is passive, and implies that someone is calling an employee to service. In an accompanying committee report, the House Committee on Civil Service stated that the "purpose of the bill is to provide leave of absence to employees . . . for jury service . . . without loss of compensation or leave." H.R. REP. NO. 76-1959, at 2 (1940). The Committee had asked for the views of the United States Civil Service Commission, and its president endorsed the bill, stating that, "Although employees of the Government are in a number of jurisdictions exempt from jury service, the Commission believes that in those States where jury duty is *compulsory* employees of the government should be permitted to serve without loss of compensation or leave[.]" *Id.* at 2 (emphasis added). This original statute thus only was meant to apply to those "called upon" to serve. If an employee lived in a jurisdiction where he was exempt from service and had volunteered to serve, that likely would not have fallen within the legislative intent of the leave statute.

When Congress amended the statute in 1970 to include the modern statutory language as well as expanded coverage for witness leave, the concern with compulsory service remained. The language of the original statute was replaced with the modern language—"summoned . . . by a court . . . to serve"— and applied to both jurors and witnesses. S. REP. NO. 91-1371, at 16 (1970). According to an accompanying committee report from the Senate Committee on the Judiciary, the "major purpose of this legislation is to alleviate financial hardship now imposed on employees of the United States and of the District of Columbia resulting from their service as a witness [or] a juror." *Id.* at 4. The report notes,

11

> It should be emphasized that an employee would be entitled to witness leave only if he is summoned by the court or authority responsible for the conduct of the proceeding.  The employee *would not be entitled to leave if he just volunteered*; he must be summoned. . . .  What is intended is that the summons be an official request, invitation, or call, evidenced by an official writing.

*Id.* at 8 (emphasis added).  At a hearing on an earlier version of the bill, members of the House of Representatives expressed a concern over "volunteering" as a witness in order to "get out of work for a few days," *Hearing Before the Subcomm. on Manpower and Civil Serv. of the Comm. on Post Office and Civil Serv. on H.R. 10247, a Bill to Amend Title 5, United States Code, to Grant Court Leave to Employees of the United States and the District of Columbia When Called as Witnesses in Certain Judicial Proceedings on Behalf of State and Local Governments*, 91st Cong. 11 (1970) (statement of Rep. David Henderson, Vice Chair, H. Comm. on Post Office and Civil Serv.), and over using witness service as a "subterfuge for missing work."  *Id.* at 13 (statement of Rep. Richard White, Member, H. Comm. on Post Office and Civil Serv.).  Compulsory service thus remained at the core of section 6322(a)'s coverage; the legislature wanted to avoid any hardship that might be "imposed" upon federal employees when they were required to serve as jurors or witnesses.

The broad reading of section 6322(a) urged by Hall does not comport with the expressed legislative intent of that section.  Under Hall's interpretation, a federal employee could serve for an unlimited period of time on a voluntary grand jury, as long as a "summons" was received.  For instance, if the Ventura County Grand Jury did not have a two-term limit for its grand jurors, then Hall, under her interpretation, could still be serving on that jury, while drawing a federal paycheck.  *See* CAL. PENAL CODE § 901 (allowing a grand juror to serve two terms).  As discussed above, however, the expressed Congressional intent behind section 6322(a) was "alleviat[ing] financial hardship . . . imposed on employees" as a result of "their service as a witness [or] a juror."  S. REP. NO. 91-1371, at 4 (1970).  No financial hardship was imposed upon Hall; she applied for a position on the Grand Jury, served for a year, and then voluntarily accepted a second term on that Grand Jury, after being given a chance to turn down a second year of service.  In light of the legislative history, the absurd result of potentially limitless service on voluntary juries, and GAO's limitations imposed on section 6322(a)'s witness leave, the Court finds it is "unreasonable to believe that the legislat[ure] intended to include" service such as Hall's.  **Church of the Holy Trinity**, 143 U.S. at 459.  Summary judgment is therefore appropriate in favor of the government.[2]

---

[2] Hall has pointed out that some states allow individual jurors to voluntarily place their names on the jury rolls for trial juries.  *See, e.g.*, N.Y. JUDICIARY LAW § 506 (McKinney 2011) (including "persons who have volunteered to serve as jurors" on the selection list for jurors).  The process of volunteering to be on the rolls for

### B. *Defendant's Motion To Dismiss*

In addition to moving for summary judgment on Hall's pre-removal entitlements under section 6322(a), the government has moved to dismiss under RCFC 12(b)(1) Hall's post-removal claims for relief, and renewed its 12(b)(1) motion to dismiss Hall's Constitutional claims.

#### 1. Standard of Review

The government has moved to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1). The Tucker Act sets the "jurisdictional reach" of the Court of Federal Claims. **Rick's Mushroom Serv., Inc. v. United States**, 521 F.3d 1338, 1343 (Fed. Cir. 2008). That Act waives the sovereign immunity of the federal government for certain claims, including those founded upon Acts of Congress. 28 U.S.C. § 1491(a)(1) (2006); s*ee also* **Sanders v. United States**, 252 F.3d 1329, 1334 (Fed. Cir. 2001). Since the Tucker Act does not itself create any substantive rights, plaintiffs must identify a substantive right that entitles them to relief. *See* **United States v. Testan**, 424 U.S. 392, 398 (1976); **Jan's Helicopter Serv., Inc. v. F.A.A.**, 525 F.3d 1299, 1309 (Fed. Cir. 2008). Plaintiffs must establish by a preponderance of the evidence facts sufficient to invoke the court's jurisdiction. *See* **M. Maropakis Carpentry, Inc. v. United States**, 609 F.3d 1323, 1327 (Fed. Cir. 2010).

#### 2. Ancillary Relief and Constitutional Claims

Hall asks for relief related to her removal that is beyond the jurisdiction of the Court. In addition to her claim for pre-removal pay and court leave, which the Federal Circuit ordered this Court to address on its merits, Hall seeks "post removal back pay, interest, retirement, and other benefits, as well as reinstatement." Pl.'s Mot. 12.

Defendant responds that the Federal Circuit's opinion made clear that these post-removal claims are beyond the jurisdiction of this Court. According to the Federal Circuit, "[T]he ancillary claims for reinstatement and post-removal back pay were predicated on the removal action. As to those ancillary claims, *we agree with the Court of Federal Claims that it lacked jurisdiction*." **Hall**, 617 F.3d at 1317 (emphasis added). Hall calls this statement mere dictum, and not binding on this Court, while the government argues that lack of jurisdiction has been established and is the law of the case. *See* **Intergraph Corp. v. Intel Corp.**, 253 F.3d 695, 697 (Fed. Cir. 2001) ("The doctrine of law of the case generally bars retrial of issues that were previously resolved.").

---

a trial jury along with hundreds of thousands of other potential jurors is far removed from applying for a small number of spots on a grand jury, especially after being given the "opportunity to say no." Def.'s Mot. App. 17.

Regardless of whether or not the Federal Circuit's statement was dictum, it was correct. The Court of Federal Claims does not have jurisdiction over those personnel actions that are covered by the Civil Service Reform Act ("CSRA"). *United States v. Fausto*, 484 U.S. 439, 449 (1988). When the CSRA covers a personnel action, the MSPB has exclusive jurisdiction to hear a challenge to that action. *See Romero v. United States*, 38 F.3d 1204, 1211 (Fed. Cir. 1994). "'[M]ajor adverse personnel actions,'" such as removals, are covered by the CSRA. *Hall*, 617 F.3d at 1316 (citing *King v. United States*, 71 Fed. Cl. 766, 771 (2008)). Hall attempts to sidestep this limitation by citing to a number of cases involving military personnel. *See* Pl.'s Opp'n 23. The MSPB, however, does not have jurisdiction over military pay cases, and those cases are thus irrelevant to Hall's request for ancillary relief in this case. As the Federal Circuit noted, the MSPB, not the Court of Federal Claims, could hear an appeal of Hall's removal action. *Hall*, 617 F.3d at 1316 (noting that "the removal action . . . is a matter committed to the exclusive jurisdiction of the MSPB"). Since the MSPB has jurisdiction over the removal, this Court lacks it.

Hall argues that entitlement to court leave would negate her removal and thus allow this Court to exercise jurisdiction, but the Federal Circuit's opinion is quite clear to the contrary. According to Hall, if the Court finds entitlement to leave, then "that negates the preremoval charges that were brought, basically AWOL. And once those are gone, there's no removal . . . . because the removal couldn't have anything to be based on[.]" Summ. J. Arg. Tr. 20:11-15, May 25, 2011. As the Federal Circuit pointed out, however, the claim to court leave and the removal are not "inextricably intertwined." *Hall*, 617 F.3d at 1316 (internal quotations removed). That court noted that "the MSPB could deny reinstatement *even if* it found the AWOL charge to be erroneous, e.g., on the ground that her conduct in dealing with her supervisors regarding the AWOL issue was inappropriate." *Id.* (emphasis added). The Court thus disagrees with Hall that her removal would cease to exist, if this Court were to have granted her court leave.

Hall also asks this Court to hear her claims for a variety of Constitutional violations, including violations of the Due Process Clauses of the Fifth and Fourteenth Amendments, as well as the Fourteenth Amendment's Equal Protection Clause. As the Court noted in its earlier Opinion in this case, a Constitutional provision must mandate the payment of money in order for it to fall within this Court's jurisdiction. *United States v. Testan*, 424 U.S. 392, 400 (1976); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003) (noting that a provision must be "reasonably amenable to the reading that it mandates a right of recovery in damages"). In its earlier Opinion in this case, the Court found that it lacked jurisdiction to hear claims for violations of the Fifth Amendment's Due Process Clause and of the Fourteenth Amendment's Equal Protection Clause. *Hall*, 89 Fed. Cl. at 110. The Federal Circuit's ruling did not mention these claims, and the Court's Opinion as to them stands. Absent extraordinary circumstances, relitigation is barred by the law of the case. *See Fed. Air Marshals v. United States*, 84 Fed. Cl. 585, 589–90 (2008).

Furthermore, the Due Process Clause of the Fourteenth Amendment does not mandate the payment of money and is not a basis for jurisdiction. ***LeBlanc v. United States***, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

Since this Court lacks jurisdiction over Hall's post-removal and Constitutional claims, dismissal under RCFC 12(b)(1) is appropriate.

III.   Conclusion

Section 6322(a) allows court leave for an employee who is summoned to serve on a jury, and Congress passed that statute to "alleviate financial hardship . . . imposed on employees" as a result of jury service. S. REP. NO. 91-1371, at 4 (1970). Although Hall received a summons, the Court holds that her service on the 2004–05 Grand Jury is not covered by section 6322(a). Congress did not intend for section 6322(a) to provide court leave to an employee who voluntarily accepts a year-long extension of grand jury service, after already applying for and serving on a year-long grand jury. Defendant's Motion For Summary Judgment And Motion To Dismiss In Part is therefore GRANTED, and Plaintiff's Motion For Summary Judgment is DENIED. The Clerk is directed to act accordingly.

No costs.

                                                         s/Bohdan A. Futey
                                                          **BOHDAN A. FUTEY**
                                                                **Judge**